IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA

                                     Case No. 23-cr-10-wmc

     v.

KEVIN BRESLIN, et al.

          Defendant.

---

**GOVERNMENT'S RESPONSE IN OPPOSITION TO
DEFENDANT BRESLIN'S SECOND SENTENCING MEMORANDUM**

The United States, by and through undersigned counsel, respectfully submits this Response in Opposition to Defendant Kevin Breslin's Second Sentencing Memorandum (DOC. 335), which incorporates his response to the government's memorandum in support of restitution for victim the U.S. Centers for Medicare & Medicaid Services ("CMS") (DOC. 317, hereinafter "CMS Memo").[1]

**I.     ANALYSIS**

*1.  The MVRA requires restitution be made to the victims in this case.*

The Court shall order that a defendant make restitution to the victims of the offense for charges for any offense committed by fraud or deceit. 18 U.S.C. § 3663A(a)(2); (c)(1)(A)(ii). Restitution focuses on the victim and "the primary and overarching purpose of the MVRA is to make victims of crime whole, to fully compensate these victims for their losses and to restore

---

[1] The government submits this Response to address specific legal issues raised in defendant's second sentencing memo; however, due to the limited time to prepare this Response it is not intended to address all factual and legal errors contained in defendant's second memorandum. The government reserves the right to address additional issues at the scheduled November 17, 2025, sentencing hearing.

these victims to their original state of well-being." *United States v. Griffin*, 76 F.4th 724, 749 (7th Cir. 2023) (citation omitted). A victim, as defined by the MVRA, is "a person directly and proximately harmed as a result of the commission of the offense for which restitution may be ordered, including in the case of an offenses that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's conduct in the course of the scheme, conspiracy or pattern." 18 U.S.C. § 3663A(a)(2). The plain language of the statute requires that restitution seek to compensate victims for direct and proximate losses. *United States v. Gossi*, 608 F.3d 574, 581 (9th Cir. 2010). Moreover, a scheme to defraud "requires restitution for the losses caused by the entire scheme, even if the defendant is not convicted of all of the conduct that caused the loss." *Griffin*, 76 F.4th at 750 (citation omitted). "Therefore, '[a]s long as the [sentencing] court can adequately demarcate the scheme, it can order restitution for any victim harmed by the defendant's conduct during the course of that scheme.'" *Id*. at 749 (quoting *United States v. Smith*, 218 F.3d 777, 784 (7th Cir. 2000)); *see also United States v. Locke*, 643 F.3d 235, 247 (7th Cir. 2011) ("the crime comprehended by the mail and wire fraud statutes is the scheme to defraud, not just the isolated iterations of wire transmissions or mailings, so restitution for victims of the overall scheme is required.").

The amount of restitution does not need to be based solely on the indictment and can include reliable evidence not included in the indictment nor even admissible at trial. *United States v. Rutley*, 482 Fed. App'x 175, 179 (7th Cir. 2012). In fraud scheme cases, the MVRA broadly defines each victim as "any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." 18 U.S.C. §3663A(a)(2). Therefore, it includes victims not identified in the indictment. *Id*.; *accord Locke*, 643 F.3d at 246-47; *Smith*, 218 F.3d at 784.

The government must prove the restitution amount by a preponderance of the evidence. 18 U.S.C. § 3664(e); *United States v. Robl*, 8 F.4th 515, 527 (7th Cir. 2021). "That standard requires only that the fact-finder believe that the existence of a fact is more probable than its non-existence." *Id*. (citation omitted). While the government has the burden to prove the loss, "a defendant's wholly unsubstantiated statements are not enough to counter or even question the court's acceptance of the government's proof of loss." *Id*. (citation omitted).

Section 3664 governs the procedures for the court's issuance and enforcement of a restitution order. 18 U.S.C. § 3664. The MVRA requires courts to order restitution to each victim in the full amount of the victim's losses as determined by the court and without consideration of the defendant's economic circumstances. *Id*. § 3664(f)(1)(A). The court is prohibited from considering "the fact that a victim has received or is entitled to receive compensation with respect to a loss from insurance or *any other source*" in determining the amount of restitution. *Id*. § 3664(f)(1)(B) (emphasis added); *accord United States v. Malone*, 747 F.3d 481, 485 (7th Cir. 2014). "[W]hen determining the restitution amount the court is confined to considering (1) the property or value of property lost by the victim and (2) the value of property returned from the defendant to the victim, but not the victim's receipt of property from third parties." *Malone*, 747 F.3d at 485.

A civil judgment does not preclude a victim from obtaining a restitution order. A restitution order issued pursuant to the MVRA shall be issued and enforced in accordance with § 3664. Section 3664(j)(2) provides that "[a]ny amount paid to a victim under an order of restitution shall be reduced by any amount later recovered as compensatory damages for the same loss by the victim in – (A) any Federal civil proceeding; and (B) any State civil proceeding, to the extent provided by the law of the State." 18 U.S.C. § 3664(j)(2); *see also Malone*, 747 F.3d at

486 (if a victim later recovers in a civil suit some of the victim's loss as compensatory damages, the court may reduce the restitution amount). Thus, while victims are not entitled to double recovery for the same loss through both a restitution order and a civil judgment, any amount recovered by a victim in a separate civil action can be credited to the defendant's restitution order, thereby reducing the restitution amount.

Contrary to Breslin's claims, the individual victims here are squarely covered by both the Mandatory Victim Restitution Act ("MVRA") and relevant case law. The defendant, citing to no authority, "objects to the addition of the individual claims and Wisconsin unemployment insurance tax loss on the basis that it has not been shown that Breslin knew, or under the circumstances, reasonable [sic] should have known that the individual claims would have resulted from the offense." DOC. 335 at p. 3. He also argues that individual claims are "outside the scope of the charged scheme to defraud Medicare and Medicaid" and that the unemployment insurance tax loss should not be included because it did not result from "the health care offense or the conspiracy to defraud the United States" to which Breslin pled guilty. *Id*. The defendant's arguments are unsupported by the law and should be denied.

First, restitution is not limited only to reasonably foreseeable losses because it seeks to compensate the victims for all direct and proximate losses resulting from the defendant's conduct. *Gossi*, 608 F.3d at 581. Second, although an indictment is not required to set forth every victim of the fraud scheme for the Court to impose a restitution order, count one of the indictment alleged that the defendant's broad fraud scheme involved: not paying over to the third party administrators employees' withheld insurance premiums from their paychecks to pay their medical claims, non-payment of vendors and contractors, not paying the employment taxes to the Wisconsin

4

Department of Revenue, and stealing money from the resident trust accounts. *See* DOC. 3, Indictment at p.3 ¶ 5; p. 18 ¶ 37; p. 19 ¶ 38.

In *United States v. Maynard*, 984 F.3d 948, 963–64 (10th Cir. 2020), a case with similar facts, the defendant was convicted for failure to pay taxes and conspiracy to steal the contributions made by employees to the company's benefit plan and their health care contributions. There, the court succinctly explained the appropriateness of restitution where health insurance premiums are concerned: the defendant's "criminal acts caused the employee-victims direct out-of-pocket losses when he kept the deducted insurance premiums deducted from their paychecks, and when they had to pay uncovered medical bills. Only by ordering restitution which covers both losses would the employee-victims be made whole." *Id*. at 969; *see also United States v. Donaby*, 349 F.3d 1046, 1054 (7th Cir. 2003) (defendant argued that he was not responsible for restitution for damage caused to a car when he fled the scene of a bank robbery. The court rejected this argument because although fleeing was not an element of defendant's offense, the MVRA does "not limit restitution to the elements of the offense" and, thus, "while fleeing the bank is not an element of bank robbery, the damage . . . was a direct and proximate consequence of the specific conduct involved" in the offense).

Importantly, where a defendant pleads guilty, he admits "the essential elements of the offense," *United States v. Scalzo*, 764 F.3d 739, 746 (7th Cir. 2014), which here is a scheme to defraud. As long as the Court can adequately demarcate the scheme, it can order restitution for *any victim* harmed by the defendant's conduct during the course of that scheme. *Griffin*, 76 F.4th at 749 (emphasis added); *Locke*, 643 F.3d at 247 (citing *United States v. Kones*, 77 F.3d 66, 70 (3d Cir. 1996) ("[W]here a defendant is convicted of defrauding person X and a fraudulent scheme is an element of that conviction, the sentencing court has power to order restitution for the loss to

defrauded person Y directly caused by the defendant's criminal conduct, even where the defendant is not convicted of defrauding Y.")); *see also United States v. Kilcrease*, 665 F.3d 924, 929 (7th Cir. 2012) (a guilty plea provides an adequate factual basis for the essential elements of the offense); *Robl*, 8 F.4th at 529, 531 (affirming restitution order and finding that because defendant admitted to his conduct in guilty plea, he could not counter the accuracy of the restitution claims by "bald assertions without the support of any documented proof").

The harm to the individual employee victims was proximately caused by the defendant's conduct of stealing their insurance premiums that were deducted from their paychecks and not paying the third-party administrators. As a proximate cause of the defendant's scheme, the insurance companies were not paid, and ultimately did not provide insurance coverage for the employees, thereby leaving the employees with the responsibility to pay their medical bills. The employees and covered family members believed they had insurance coverage because the insurance premiums were deducted from their paychecks and received medical treatments and care. Medical providers added interest and late fees to the employees' untimely paid medical bills. To make the employee victims whole, interest, costs, and fees are properly included in a victim's restitution claim and are not precluded by the MVRA, nor U.S.S.G. § 5E1.1. *See Malone,* 747 F.3d at 485 ("Congress intended the MVRA to ensure victims are compensated for the full amount of their losses caused by a defendant's criminal conduct" (citation omitted)); *Rutley*, 482 Fed. App'x at 178-179 (credit card interest was properly included in the victim's restitution); *United States v. Cox*, 665 Fed. App'x 457, 462 (6th Cir. 2016) (a restitution amount is not erroneous if it includes fees and penalties); *United States v. Qurashi*, 634 F.3d 699, 703-04 (2d Cir. 2011) (MVRA allows the court to award prejudgment interest in a criminal restitution order); *United States v. Jimenez*, 513 F.3d 62, 87 (3d Cir. 2008) (the fact that interest can be included in

6

restitution is irrelevant for a loss determination). Failing to include interest, fees, and costs in determining a restitution amount defeats and undermines the MVRA's purpose—"to make victims of crime whole, to fully compensate these victims for their losses and to restore these victims to their original state of well-being." *Griffin*, 76 F.4th at 749 (citation omitted).

> 2. *Despite his guilty plea, Breslin continues to minimize his conduct, attempting to paint his long, complex fraud scheme as having caused no harm until 2018.*

In addition to trying to completely avoid restitution to the many individual victims in this case, Breslin also attempts to limit the extensive harm caused by his fraudulent scheme to only 2018. This includes, for example, asserting that because Breslin resigned from KBWB on August 3, 2018, no restitution claim can be made for after that date, nor can claims for refunds of resident security deposits (due to the resident's death or move from a KBWB facility) made after August 3, 2018 be valid. As discussed above and in the CMS Memo, Seventh Circuit case law is clear that in assessing restitution from a scheme to defraud, as we have here, the proper analysis of the effects from a complex and wide-ranging fraud scheme for purposes of restitution is the <u>entire</u> scheme. *See, e.g., United States v. Belk*, 435 F.3d 817, 819 (7th Cir. 2006) (for mail fraud, the crime covered "is the *scheme* to defraud, not (just) the mailings that occur in the course of the scheme;" thus, in conviction for multi-year scheme to defraud, restitution for the whole scheme is appropriate); *United States v. Bertram*, 900 F.3d 743, 748–49 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 852 (2019) (a scheme to defraud under the health care fraud statute means the same thing as a "scheme to defraud" under the wire fraud statute).

The defendant's overarching scheme involved the diverted funds from a multitude of sources to pay distributions and guaranteed payments to the owners of KBWB and other purposes. This included funds necessary to care for residents, Medicare/Medicaid funds, vendor payments, taxes owed to the IRS, resident trust account funds, resident security deposits, and health

insurance premiums paid by KBWB's employees. The effects of the defendant's fraudulent conduct did not stop when he no longer managed KBWB, but rather continued to harm the victims and cause them financial losses that directly resulted from the defendant's criminal conduct. Vendors and contractors remained unpaid, some vendors continued to provide services while not being paid, and there was no money to return to residents or their family the security deposits, even if they passed away or left the Atrium facilities after the defendant stopped managing KBWB.

Contrary to the defendant's assertion, the Court is prohibited from considering the defendant's economic circumstances, including any alleged contributions to KBWB, and the distributions and guaranteed payments he received when determining restitution. For a restitution order, the focus is on the victim's losses, not the defendant. Furthermore, in determining a defendant's ability to pay a restitution order, indigence is only one factor the Court must consider and it is not decisive. *United States v. Trigg*, 119 F.3d 493, 498 (7th Cir. 1997). Here, the defendant is educated, intelligent, is a certified public accountant, and there is a likelihood that he will have the ability to earn an income to make restitution payments. Therefore, the Court should enter a restitution order against the defendant. *See id.* (the Court properly considered that the defendant could apply his criminal ingenuity toward legitimate employment and become able to pay restitution); *see also United States v. Viemont*, 91 F.3d 946, 951-52 (7th Cir. 1996) (court may consider a defendant's education and entrepreneurial talents in assessing likelihood he will be able to make restitution, including his strong potential to generate income despite his current financial difficulties. Court properly found the defendant would generate sufficient income in the future to pay the restitution).

Finally, the Court may rely on the information presented in the Presentence Report as long as it is well supported and appears reliable. *Robl*, 8 F.4th at 529. The documentation supporting the victims' restitution claims proves by a preponderance of the evidence claims. For victims who did not have or could not obtain supporting documents from approximately seven to nine years ago, they provided either affidavits or declarations.

The government provided to the Court, the defense, and the probation office the victims' restitution claims and supporting documentation, including victims' affidavits and declarations. The defendant has the burden to show the PSR is inaccurate or unreliable and a simple denial of the PSR's accuracy is insufficient to discharge his burden. *Id*.

## II.    CONCLUSION

For the foregoing reasons, and for all the reasons set forth in the CMS Memo, the government respectfully requests the Court find that the record in this matter, including the facts set out in the Indictment, the plea agreement and plea allocution, the PSRs, and Medicare's rules and regulations all support restitution orders for both the individual victims and for CMS and the IRS, as calculated in the PSRs.

Respectfully submitted,

LISA HSIAO
ACTING DIRECTOR
ENFORCEMENT & AFFIRMATIVE
LITIATION BRANCH
U.S. DEPARTMENT OF JUSTICE

/s/ *Karla-Dee Clark*
Karla-Dee Clark
Steven R. Scott
Rowan L. Reid
Trial Attorneys
U.S. Department of Justice
Consumer Protection Branch
450 Fifth Street, NW, Suite 6400S

Washington, D.C.  20001
Clark (202) 532-4098; Scott (202) 286-5293; Reid
(202) 532-4315
Karla-Dee.Clark@usdoj.gov;
Steven.R.Scott@usdoj.gov; Rowan.L.Reid@usdoj.gov


CHADWICK M. ELGERSMA
ACTING UNITED STATES ATTORNEY

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 14, 2025 I filed the foregoing document with the Clerk of Court using the CM/ECF system. Notice of this filing will automatically be sent to counsel of record by operation of the CM/ECF system.  Counsel for the defendant may access this document through the CM/ECF system.

*Karla-Dee Clark*
Karla-Dee Clark
U.S. Department of Justice
